
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **KENNETH WISE** | § | |
| xxx-xx-0455 | § | Case No. 11-40741 |
| **and MARY WISE** | § | |
| xxx-xx-2423 | § | |
| | § | |
| Debtors | § | Chapter 7 |
| ROBERT A. PICCO | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 12-4035 |
| | § | |
| MARY WISE | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION

ON THIS DATE the Court considered the Motion for Summary Judgment filed by the Plaintiff, Robert A. Picco ("Plaintiff"), in the above-referenced adversary proceeding and the response in opposition to the Motion filed by the Defendant, Mary Wise ("Defendant" or "Debtor"). The complaint of the Plaintiff seeks a determination of whether an alleged debt allegedly owed to him by the Defendant-Debtor is excepted from discharge pursuant to 11 U.S.C. §523(a)(15). The following memorandum of decision disposes of all issues before the Court.[1]

---

[1] This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

*Summary Judgment Standards and Process*

Pursuant to Fed. R. Bankr. P. 7056, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.[3] The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this case, the burden of persuasion at trial is on the moving party, "that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial."[4] If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of

---

[2] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

[3] *Id.* at 323.

[4] *Id.* at 331 (Brennan, J., dissenting); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir.1991).

material fact for which a trial is necessary.[5] In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties,[6] or that there is merely "some metaphysical doubt as to the material facts."[7] Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[8] However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[9]

The record presented is reviewed in the light most favorable to the non-moving party.[10] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[11] Further, "[o]nly disputes

---

[5] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986), *citing* FED. R. CIV. P. 56(e).

[6] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

[7] *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[8] *Jacobs v. City of Port Neches,* 7 F.Supp.2d 829, 833 (E.D. Tex.1998) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)).

[9] *Anderson*, 477 U.S. at 248-49.

[10] *Matsushita,* 475 U.S. at 587.

[11] *Id.* at 587, *citing First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

With regard to the disposition of summary judgment motions in this case, the Court, in its scheduling order entered in this case on June 19, 2012, specifically incorporated Local District Court Rule CV-56.[12] That rule, in relevant part, directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."[13] It directs a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence." With regard to the disposition of the motion, the rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.[14]

Though she filed a response, the Debtor-Defendant failed to include a specific response to the statement of undisputed material facts offered by the Plaintiff, nor did she support any

---

[12] *Scheduling Order Arising from Management Conference* entered in this case on June 19, 2012 [dkt #8].

[13] "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." *Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (*citing* E. D. Tex. Local R. CV-56(d)).

[14] E.D. TEX. LOCAL R. CV–56(c).

responses "by appropriate citations to proper summary judgment evidence."

It is widely recognized that Fed. R. Civ. P. 56 "does not impose a duty on a court to sift through the record in search of evidence to support a party's opposition to summary judgment." *Quinn v. Roach*, 2007 WL 922235, at *3 (E.D. Tex. 2007) (*citing Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir.1996)). A non-movant must "articulate the precise manner in which evidence he sets forth supports his claims." Moreover, in designating specific facts, the non-movant must "go beyond the pleadings and use his own affidavits, ... deposition[s], answers to interrogatories, and admissions on file." *Id.* citing *Jones v. Sheehan & Young Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir.1996).

Pursuant to the foregoing District Court Rule CV-56, the Debtor-Defendant's failure to controvert the material facts set forth in the Plaintiff's motion and her failure to support such contentions by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the Plaintiff in this case "are admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c). The following material facts are therefore so admitted:

1. Plaintiff and Defendant were married to each other. The marriage ended in divorce. Defendant incurred certain debts in connection with the divorce decree or orders which remain unpaid.

2. On February 24, 1993, the Arbitrator assigned to the divorce case made his award of the property and allocation of the debts of the parties (the "Award").

3. On June 17, 1993, the Superior Court of the State of California in and for the County of Lassen, which is a court of record (the "Divorce Court"), entered a Judgment incorporating the Award into its Judgment, pursuant to a Stipulation for Judgment between the Plaintiff and Defendant. The Judgment, Stipulation for

Judgment and the Award are collectively referred to as the "Divorce Judgment."

4. The Award required the Defendant to pay certain obligations and to hold Plaintiff harmless from the obligations allocated to Defendant. In addition, Plaintiff was awarded judgment against Defendant in the amount of $11,422.00 as an equalization payment in the division of the community estate.

5. Defendant failed to pay obligations allocated to her totaling $2,800 which Plaintiff paid. Defendant also failed to make the property equalization payment of $11,422.00 to Plaintiff.

6. Plaintiff filed a motion to enforce the Divorce Judgment. On August 2, 1994, the Divorce Court entered "Findings and Order After Hearing," granting Plaintiff judgment against Defendant (the "Enforcement Judgment") in the amount of $16,015.21 for:

   A. The community property equalization debt of $11,422.00 under the Divorce Judgment, with interest at the rate of 10% per annum from June 18, 1993 to July 18, 1994 in the amount of $1,237.38, for a total of $12,659.38;

   B. Community bills allocated to Defendant but paid by Plaintiff in the amount of $2,800.00, for which Defendant was obligated to hold Plaintiff harmless under the Divorce Judgment, with interest at 10% per annum through July 17, 1993, in the amount of $303.33, for a total of $3,103.33;

   C. Costs and attorneys fees in the amount of $266.50.

7. The Divorce Court ordered that the judgment be offset against the Defendant's share of Plaintiff's retirement when Plaintiff began drawing his retirement. The Divorce Court further ordered that interest would continue to accrue on the $16,015.12 judgment at the rate of 10% per annum until paid.

8. The debt which Defendant owes to Plaintiff under the Enforcement Judgment in the principal amount of $16,015.21, together with interest at the rate of 10% per annum since August 2, 1994, remains unpaid.

9. The Plaintiff retired December 31, 2011 and began receiving his retirement in March 2012. However, the retirement plan is holding $908 per month from the Plaintiff's retirement check pending resolution of this Adversary Proceeding. No payments have been made on the judgment granted under the Enforcement Judgment.

10. On March 9, 2011, the Defendant filed a voluntary petition for relief under Chapter 7 in this Court.

11. On June 11, 2011, a Discharge Order was entered by this Court and on June 13, 2011, the Defendant's bankruptcy case was closed.

12. On November 6, 2011, Plaintiff signed an "Application for and Renewal of Judgment" in the Divorce Court, (the "Renewal of Judgment") which was filed on November 14, 2011. The unpaid balance of the debt was $43,710 as of November 6, 2011. Interest continues to accrue at the rate of $4.39 per day.

13. On December 12, 2011, Defendant filed an Amended Notice of Motion to Strike the Notice of Renewal of Judgment in the Divorce Court. The Defendant has asserted in the Motion to Strike that the debt had been discharged in bankruptcy, and is null and void and of no force or validity whatsoever. The Divorce Court has stayed hearings on the Defendant's Motion to Strike pending a determination by this Court regarding the dischargeability of the debt.

The Defendant elected to forego any challenge to the undisputed material facts, and instead asserted that the entry of summary judgment in favor of the Plaintiff is precluded on three distinct grounds.

The Defendant first asserts that the Plaintiff's complaint is untimely since it was admittedly filed on February 28, 2012 — long after the deadline of May 31, 2011 established under Fed. R. Bankr. P. 4007. Such an argument would have been valid prior to October 17, 2005. However, one of the significant changes imposed by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") was that "the reference to section 523(a)(15) was deleted from section 523(c)(1) . . . . [T]herefore, debts falling under section 523(a)(15) are no longer included in the category of debts that are discharged automatically if a party does not obtain a determination of

nondischargeability from the bankruptcy court." 4 COLLIER ON BANKRUPTCY ¶ 523.23 at p. 523-125 (16th ed. rev. 2009); *see also*, *In re Rogowski*, 462 B.R. 435, 440 n.8 (Bankr. E.D.N.Y. 2011) ["No adversary proceeding need be filed to obtain a determination of nondischargeability as to debts that fall within the definitions of §§ 523(a)(5) and 523(a)(15)."]; *Paulus v. Paulus (In re Paulus)*, 2011 WL 2560285, at *2 (Bankr. N.D. Ohio 2011) ["BAPCPA ... made property settlement debts encompassed under § 523(a)(15) unqualifiedly nondischargeable."]; *Loe, Warren, Rosenfield, Katcher, Hibbs, & Windsor, P.C. v. Brooks (In re Brooks)*, 371 B.R. 761, 768 (Bankr. N.D. Tex. 2007) ["Section 523(c) provides that the non-dischargeability of certain debts, including those covered by sections 523(a)(5) and 523(a)(15), need not be established prior to entry of a discharge order."].  Thus, the timing of the filing of the Plaintiff's complaint does not preclude the granting of the relief sought therein.

Secondly, though not specifically mentioned in her written objection, the Defendant raises in her affidavit certain complaints regarding alleged deficiencies in the process that led to the entry of the Enforcement Judgment against her.  This Court is certainly precluded from hearing any of those complaints by the *Rooker-Feldman* doctrine, which prevents lower federal courts from reviewing a state court decision when the issues raised in the federal court would be "inextricably intertwined" with a state court judgment and the federal court would, in essence, be called upon to review the state court decision.  *Davis v. Bayless*, 70 F.3d 367, 375-76 (5th Cir. 1995) (*citing United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)).  A claim entertained by a lower federal court

is "inextricably intertwined" with those addressed in the state court "whenever the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *In re Popkin & Stern*, 259 B.R. 701, 706 (B.A.P. 8th Cir. 2001) (*quoting Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997)); see also *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) [observing that "as we have noted in other cases, the *Rooker–Feldman* doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment"]. The doctrine recognizes that "judicial errors committed in state courts are for correction in the state court systems" through the appellate process. *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986). Since we are clearly dealing with a final judgment of a California state court and this court cannot reach a decision regarding the Defendant's complaints without engaging in a review of the propriety of the entry of that judgment, the issues raised by the Defendant are "inextricably intertwined" with the California Enforcement Judgment and the *Rooker-Feldman* doctrine precludes this Court's determination of the Defendant's complaints regarding the propriety of that Enforcement Judgment. *Davis*, 70 F.3d at 375; *Shepherd*, 23 F.3d at 924.

Finally, the Defendant asserts that summary judgment in favor of the Plaintiff is precluded because the Enforcement Judgment has lapsed under California law and can no longer be enforced against her. Yet that issue is outside the scope of this proceeding. The issues of dischargeability and enforceability are distinct. Once a debt has been validly recognized under state law, as the Enforcement Judgment does in this case, the

fact that there may subsequently be defenses to the enforcement of that judgment under state procedural law will not effect nor preclude the determination of dischargeability under §523(a).  However, to the extent that a prior judgment debt is subsequently rendered nondischargeable under applicable bankruptcy law, then all efforts regarding the enforcement of that judgment should be directed to applicable state court. In other words, once the dischargeability matters that are in the exclusive province of this Court have been decided, the continued vitality of an issued California state court judgment is a matter better left to the California court that issued it — a court that is better suited to address the policy considerations undergirding the continued enforceability of California judgments.  Gratuitous interference with that process by this Court should be avoided. *Will v. Calvert Fire Ins. Co.,*  437 U.S. 655, 663-64 (1978).

*Non-Dischargeability Under 11 U.S.C. §523(a)(15)*

Thus, the Court turns to the dischargeability issue.  Section 523 of the Bankruptcy Code governs the determination of whether the Defendant's debts to the Plaintiff are rendered non-dischargeable.  In regard to obligations arising from divorce proceedings, §523(a)(5) exempts from discharge any domestic support obligation as that term is defined by §101(14A) of the Bankruptcy Code.[15]  However, even when an obligation

---

[15] Section 101(14A) defines "domestic support obligation" as:

"[A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provisions of this title, that is–

does not technically meet the definition of a domestic support obligation under §101(14A), an obligation "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record ..." is also excepted from discharge by §523(a)(15) — a newly amended subsection of §523(a) that substantially affects the dischargeability of other obligations arising from the context of a divorce.[16]

Before the introduction of §523(a)(15) in 1994, debts arising from settlements in divorce proceedings were generally dischargeable if they could not be fairly characterized as an obligation "in the nature of support." The addition of §523(a)(15) in 1994,

---

        (A) owed to or recoverable by--
            (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
            (ii) a governmental unit;
        (B) in the nature of alimony, maintenance, or support ... of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
        (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
            (i) a separation agreement, divorce decree, or property settlement agreement;
            (ii) an order of a court of record; or
            (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; ....

11 U.S.C. § 101(14A) (West Supp. 2012).

[16] See 11 U.S.C. §523(a)(15) (West Supp. 2012).

however, settled that issue to some degree by making all debts arising from a divorce decree or separation agreement non-dischargeable unless a debtor successfully demonstrated an inability to pay the contested domestic debt or established that a discharge of that debt would benefit him more than it would harm the non-debtor obligee.[17] Thus, the (a)(15) exception to discharge for debts outside the standard (a)(5) category of support obligations was originally intended to protect non-debtor spouses who, for example, might have agreed to take lower child support payments in exchange for the assumption of marital debt by the obligor/debtor-spouse.

However, the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005 dramatically altered the language of §523(a)(15) by deleting both of the subsections under which a debtor might seek the dischargeability of a

---

[17] After the 1994 amendments, the language of § 523(a)(15) excepted from discharge any debt:

. . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless-

    (A)    the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

    (B)    discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15) (West 2004).

settlement debt.  This deletion eliminated any consideration of a debtor's "ability to pay" or the use of any "balancing test" and instead rendered as non-dischargeable virtually all obligations arising between spouses as a result of a divorce decree.  According to the revised subsection, as long as the obligation is "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record or a determination made in accordance with State or territorial law by a governmental unit," then its enforcement cannot be eliminated by a bankruptcy discharge order.[18]  As analyzed by one commentator,

> [t]he enactment of subsection 523(a)(15) and the increase in the scope of the discharge exception effected by the 2005 amendments, expresses Congress' recognition that the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments.  State courts do not always draw a sharp distinction between support and property division in providing for the post-divorce economic security of dependent family members.  Property settlement arrangements are often important components of the protection afforded individuals who, during the marriage, depended on the debtor for their economic well-being.

4 COLLIER ON BANKRUPTCY ¶ 523.23 at p. 523-125 (16th ed. rev. 2009).

Therefore, in order for the debt arising from the Enforcement Judgment to be excepted from discharge, the undisputed facts must demonstrate that: (1) the Debtor-Defendant owes a debt to a spouse, former spouse, or child which (2) was incurred in the

---

[18] 11 U.S.C. §523(a)(15) (West Supp. 2012).

course of a divorce or separation or in connection with a separation agreement, divorce decree, or other court record in a divorce or separation case. Both requirements are fulfilled by this existing obligation. It is admitted by the Defendant under Rule CV-56(c) that the Enforcement Judgment evidences a debt that the Defendant owes to her ex-spouse. Further, it is further admitted by the Defendant under Rule CV-56(c) that such a debt was created by the Superior Court of the State of California in and for the County of Lassen that documented and implemented the marital dissolution of the parties. Thus, despite the fact that this type of obligation might have been dischargeable at some earlier time, the 2005 revisions to §523(a)(15) now render this type of obligation non-dischargeable, even though it may fall outside the scope of obligations that have traditionally been characterized as alimony or support. Section 523(a)(15) was amended in order to protect virtually all divorce-related obligations from the scope of a subsequent bankruptcy discharge and the obligation evidenced by the Enforcement Judgment falls well within the expanded scope of that subsection.

    Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, the material facts admitted to exist under Fed. R. Bankr. P. 56 and E.D. TEX. LOCAL R. CV–56(c), the relevant legal authorities and for the reasons set forth herein, the Court concludes that there is no genuine issue as to any material fact and that the Plaintiff is entitled to judgment as a matter of law. Thus, the Court therefore concludes that the Plaintiff, Robert A. Picco, is entitled to summary judgment that the debt owed to him by the Defendant, Mary Wise, should be declared

nondischargeable under 11 U.S.C. §523(a)(15). An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 11/05/2012

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE